# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| F & J SAMAME, INC. d/b/a ALAMO PACKING AND CANDY COMPANY, | § § § | |
| *Plaintiff,* | § § | |
| | § | Civil Action No.  SA-13-CV-365-XR |
| v. | § § | |
| ARCO IRIS ICE CREAM, ET AL., | § § | |
| *Defendants.* | § § | |

## ORDER

### I.      Background

Plaintiff F&J Samame, Inc. does business as Alamo Packing and Candy Company.  It has been in business since 1991 and sells, among other items, various candy products.

Defendant, Arco Iris Ice Cream (Arco), began business in Texas in 2000 selling ice cream products.[1]  Arco is owned by five brothers.[2]   In 2010 or 2011, it contacted Gilberto Luna about its idea to sell candy products.  Mr. Luna is associated with a Monterrey, Mexico company called Empaques y Conversiones.  Mr. Luna assisted in the design and manufacture of the packaging for certain candy products.  Defendant began selling candy products in approximately May 2011.[3]   The Defendant also used a San Antonio company, Baur Label, to design and manufacture labels for certain candy products in 2011.

---

[1] Plaintiff alleges that Arco Iris also conducts business using the names "Paleteria Arco Iris," and "Arcoiris Ice Cream and Candy."  Docket no. 16, ¶ 2.
[2] Elias Villalpando, Rafael Villalpando, Salvador Villalpando, Guillermo Villalpando, and Raul Villalpando.
[3] Transcript of February 26, 2015 hearing at p. 17.

In summary, Plaintiff alleges that the packaging of Arco's candy products has been wrongfully copied to look like its own products.  Plaintiff alleges that Defendants' actions constitute trade dress infringement, false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., and trademark infringement, trade dress infringement, palming off, and unfair competition under Texas law.

Pending before the Court are numerous discovery motions.  Earlier, Plaintiff had propounded requests for production of documents to the Defendants requesting email and other documents that relate to the 2010 or 2011 decision to package, label and market candy products. Defendants had responded that they did not possess any responsive documents.

All parties agree that the duty to preserve documents was not triggered until the day Defendants received the Complaint and Summons in this case (May 24, 2013).  The parties disagree whether relevant documents may have been in existence on that date.

### A.  Defendant's email system pre-lawsuit filing

From 2006 to about August 2012, Arco used Hotmail, a free web-based email service. Hotmail is owned by Microsoft.  Although not paid by Arco, Rafael Villalpando, Jr. serves as the family-owned company's IT person.

Rafael Jr. testified that sometime near August 2012, Arco was no longer able to access its emails through Hotmail[4], that he contacted Microsoft for assistance, but that because it was a free service there was no technical support available.[5]  Rafael Jr. further testified that in response

---

[4] Rafael Jr. testified he believes this email account was "hacked" and taken over by some third party.
[5] Rafael Jr. contacted Microsoft using his private AT&T email address and used a Dell Inspiron 1501 laptop to send those communications.  As will be discussed below, the contents of the Dell laptop were deleted on May 28, 2014.

to this "lost" email account, he merely opened a new email account using Yahoo Mail (or "ymail") on July 19, 2012 (docket no. 83).

Arco argues that the explanation proffered by Rafael Jr. explains why it has no responsive documents to many of the Plaintiff's discovery requests.  Because of numerous prior discovery fights in this case, on May 27, 2014 the Court appointed Craig Ball as a Special Master.  Defendants were ordered to continue their preservation obligations, especially preserving any hard drives that contained information related to the Defendants' candy business. Mr. Ball was ordered to examine the hard drives to determine what information related to the candy business (from 2011 to the present) could be located.  Mr. Ball was also to review the hard drives for any information related to the "loss" of the Hotmail account, the cessation of the Hotmail account, and the date the ymail account began to be used by Defendants.

When the Special Master inspected the hard drives he discovered that CCleaner[6] had been run on a laptop and PC on the afternoon of May 27 and the morning of May 28, 2014.  The Special Master noted that "a broad swath of forensically-significant active files was deleted and overwritten and remnant data residing within the unallocated clusters ("free space") of the drive were also overwritten."  It is estimated that over 62,000 files and folders were deleted and unable to be recovered.  It is undisputed that Rafael Jr. ran CCleaner on both the laptop and PC.

---

[6] "CCleaner is a freeware system optimization, privacy and cleaning tool. It removes unused files from your system allowing Windows to run faster and freeing up valuable hard disk space. It also cleans traces of your online activities such as your Internet history. Additionally it contains a fully featured registry cleaner." http://www.piriform.com/ccleaner.

### B. Hotmail to ymail

Plaintiff first attacks Rafael Jr.'s version of events arguing that it recently discovered an email dated September 3, 2008 containing the email address arcoirisice@ymail.com.[7] Accordingly, Plaintiff argues that the story of a lost Hotmail account that prompted the change to a ymail account in 2012 is false.  Defendant responds that this email from Mr. Luna to Rafael Villalpando was sent to rafaelvillalpando@hotmail.com.[8]  Defendant postulates that whatever email review platform Plaintiff's counsel is using inadvertently converted the email address. Plaintiff takes issue with this argument (docket no. 81) and blames Defendants for intentionally or inadvertently corrupting files.  Regardless of this latest squabble, Plaintiff does not seriously challenge the fact that ymail was established in 2012, and no other email has been discovered with a ymail address prior to August 2012.  Indeed, the Special Master's forensic investigation of Mr. Luna's laptop found this September 3, 2008 email and the Special Master notes a Hotmail email address.[9]

### C. Use of CCleaner

As stated above, the Court appointed a Special Master to inspect the Defendant's laptop[10] and PC.  Rafael Jr. used CCleaner on both these devices.  The parties have yet another argument about when CCleaner was installed on these devices.  Plaintiff contends that CCleaner was never installed until after the Court's May 27, 2014 hearing.  Defendants argue that the application had already been installed and used previously, and that an update was perhaps installed after the Court's hearing.   In any event, although Defendant's culpability is enhanced by any new

---

[7] Docket 77-1.
[8] Docket 52-5, page 7 of 14.
[9] Special Master Report dated January 18, 2015 at p. 3.
[10] Rafael Jr. testified that the laptop is actually his personal laptop, but acknowledged that it had been used for company business on an infrequent basis.

4

installation of CCleaner after the Court's hearing, the fact remains that Rafael Jr. intentionally ran the application after Defendants were specifically ordered by the Court not to tamper with their computers.   In addition, Rafael Jr. not only tampered with the Defendants' computers, rather than using CCleaner's default options which would have deleted the temporary internet history files, cookies and temporary files, Rafael Jr. also checked the wipe free space function.[11]

Rafael Jr. was informed by Arco's attorneys of this Court's appointment of a Special Master and the order not to tamper with any hard drives.   Rafael Jr. attempts to excuse his "mistake" by claiming that he was merely deleting "junk" because the laptop and PC are routinely used by family members for non-company business.   Rafael Jr. seems to argue he was just trying to protect the privacy of family members, or alternatively, he was just trying to make the Special Master's job easier by removing "junk."   Both arguments fail.   If there were legitimate privacy issues, Rafael Jr. should have brought these to the attention of Arco's attorneys for resolution.   The alternative argument fails inasmuch as Rafael Jr. consciously knew he was wrong in deploying CCleaner as his admissions to the Special Master make clear.   Also troubling is the fact that someone used a flash drive during the May 2014 time frame that Rafael Jr. deployed CCleaner.   The flash drive has not been located.

Even assuming that Arco "lost" its Hotmail account in August 2012, the wiping of the laptop hard drive likely resulted in the loss of information discussing the design and manufacture of the labels and packages of the candy products.   In addition, although the Defendant has compiled some information relating to candy product sales, the financial information produced is

---

[11] "When you delete a file, Windows removes the reference to that file, but doesn't delete the actual data that made up the file on your hard drive. Over time, this data will be overwritten as Windows writes new files to that area of the drive.   This means that, given the right software, someone could reconstruct all, or parts of files that you've deleted. For privacy and security reasons, you can set CCleaner to wipe the free areas of your hard disk so that deleted files can never be recovered."   http://www.piriform.com/docs/ccleaner/using-ccleaner/wiping-free-disk-space.

incomplete.[12]   Again, assuming the Hotmail emails were lost prior to any duty to preserve triggered, as of the date the Complaint was served upon Defendants, the laptop likely would have contained relevant non-email information, such as initial label and package designs and data related to sales.   Accordingly, Defendants failed to preserve certain data and Rafael Jr. intentionally destroyed relevant data.

## II.    Current spoliation law

Because of the Defendant's intentional destruction of evidence, Plaintiff requests that the Court sanction Arco by making it pay for the attorney's fees and costs incurred by Plaintiff as a result of the discovery fights in this case[13] and/or submit an adverse inference instruction to the jury.

"As a general rule, in this circuit, the severe sanctions of granting default judgment, striking pleadings, or giving adverse inference instructions may not be imposed unless there is evidence of 'bad faith.'" *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 614 (S.D. Tex. 2010) (citing various Fifth Circuit cases).   "Mere negligence is not enough to warrant an instruction on spoliation." *Cammarata*, 688 F.Supp.2d at 614.

"It is well established that a party seeking the sanction of an adverse inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or

---

[12] "[D]isgorgement of profits is a traditional trademark remedy." *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004–05 (9th Cir. 2004).
[13] Plaintiff's counsel has submitted an Application for Attorney's Fees (docket no. 84) claiming that Plaintiff has incurred $97,160 in attorney's fees and $5,163.07 in expenses as a result of the various discovery disputes.

defense such that a reasonable trier of fact could find that it would support that claim or defense." *Cammarata*, 688 F.Supp.2d at 615-16.

"The 'relevance' and 'prejudice' factors of the adverse inference analysis are often broken down into three subparts: '(1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the nondestroying party has suffered prejudice from the destruction of the evidence.'" *Cammarata*, 688 F.Supp.2d at 616 (internal citations omitted).

"Courts agree that a willful or intentional destruction of evidence to prevent its use in litigation can justify severe sanctions. Courts also agree that the severity of a sanction for failing to preserve when a duty to do so has arisen must be proportionate to the culpability involved and the prejudice that results. Such a sanction should be no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Cammarata*, 688 F.Supp.2d at 618.

"[T]he judge [imposing sanctions] should take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms. Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime." *Cammarata*, 688 F.Supp.2d at 618 (*citing Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990)). "A measure of the appropriateness of a sanction is whether it 'restore[s] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Cammarata*, 688 F.Supp.2d at 618 (internal citations omitted).

### III.     Prejudice to Plaintiff

As stated above, Arco had control over the PC and laptop and had an obligation to preserve relevant information when they were served with the summons and complaint in this case.  In May 2014 Defendants allowed Rafael Jr. to destroy that evidence by allowing him to wipe the hard drive of the laptop.  The Court rejects any argument that since Rafael Jr. was unpaid the Defendants are absolved from his actions.   In this family-owned business the Defendants effectively designated Rafael Jr. as their IT consultant and have proffered him as their agent throughout the discovery process.  The contents of the laptop were destroyed and rendered incapable of restoration.  The evidence was relevant and destroyed with a culpable state of mind.   Accordingly, the only remaining issue is whether the Plaintiff has suffered prejudice from the destruction of the evidence.

#### A.  Attempts by Arco at remediation

Recognizing the "mistake" made by Rafael Jr., counsel for Arco has attempted to provide Plaintiff with some emails from Mr. Luna and Empaques y Conversiones from the 2011-2012 timeframe.  The effort has unfortunately produced more questions.  The Defendant also acquired a hard drive from a laptop used by Mr. Luna.  The Special Master's Report indicates that no email traffic received from rafaelvillalpando@hotmail.com or other known Arco email addresses to Mr. Luna was found on the hard drive.  The Special Master opines that either communications were "an entirely one-sided correspondence, or the hard drive supplied is not a definitive source for Mr. Luna's email."[14]

---

[14] Special Master Report dated January 18, 2015 at p. 5

There appears to be some emails in February 2011 from Mr. Luna to Gerardo Delagarza, sent to Mr. Delagarza's personal yahoo email address that reference Sabrositos candy bags.[15]  On June 12, 2012, Jesus Garcia (identity unknown) sent an email to Mr. Luna that attached a .jpeg (design of chicharrones sabrositos).[16]  No .jpeg image, however, was produced.   Rafael Sr. sent an email to Mr. Luna on June 13, 2012 noting that Arco had reviewed the proposed design and made a change.[17]  On July 21, 2012, Jesus Garcia sent Mr. Luna an email from Mr. Garcia's personal gmail address with the design measurements of the candy bag for Saladitos con limon. A .jpeg is noted as attached to the email.  Again, no .jpeg image was produced.  On July 23, 2012, "adjustments" are made to the design.[18]

A number of emails have been produced indicating changes made to the labels and packages of the various candy products from July 27, 2012 through September 25, 2012.[19] Numerous emails reference .jpegs, but none have been produced.  Plates, negatives and drawings for some of the candy products were completed by Empaques y Conversiones on October 3, 2012.[20]

In addition, on January 10, 2015, Defendant secured a few emails from Jesus Garcia referencing the design of the candy bags and labels.[21]

While working with Empaques y Conversiones for some labels and bags, Arco was also working with Baur Labels for other candy labels.  Arco has obtained some July 28, 2011,[22]

---

[15] Arco 100049, Docket 63-3, page 43 of 69.
[16] Arco 100008, Docket 63-3, page 8 of 69.
[17] Arco 100045, Docket 63-3, page 39 of 69.
[18] Docket 63-4, pages 2, 3, 4 and 5 of 26.  See also Docket 63-3, pages 2, 34 and 50 of 69.
[19] Docket nos. 52-4 and 63-3.
[20] Docket no. 63-4, page 22 of 26.
[21] Docket Nos. 63-3 and 63-4.
[22] Exhibit D-1 to February 26, 2015 hearing.

August 2, 2011[23], August 4, 2011[24] and October 2012 emails from Baur.  Unlike the Empaques y Conversiones emails, the Baur labels have proofs of designs attached.[25]  Pete Humble, Vice-President of Baur Labels testified that when Arco approached Baur about making labels, Arco did not bring in any competitor labels to compare or use as a template or starting point for the design of the Arco labels.

### B.  Plaintiff's argument regarding prejudice

As mentioned above, Plaintiff argues it has been irreparably prejudiced because it lacks a complete understanding of what profits Defendants have made from the allegedly offending products.  "[D]isgorgement of profits is a traditional trademark remedy."  *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004–05 (9th Cir. 2004).  Plaintiff also argues that it requires the complete email history or "hard paper" documents to establish that Defendants engaged in willful infringement – deliberately copying Plaintiff's products, intending to deceive the public.

### C.  April 13, 2015 hearing

On this date the Court held yet another hearing to address the discovery issues in the case.  Defendants argued that the absence of emails in this case were explainable because "most day-to-day activity was done phone, face to face."  Defendants insist that there was "not probably anything that was still on the hard drive[s] when CCleaner was run."  As best as the Court can ascertain, Defendants make this argument based on the fact that when the duty to preserve was triggered, it had long lost its Hotmail account and Microsoft was no longer able to

---

[23] Docket no. 60-1, pp. 16-20.
[24] Exhibits D-2 through D-7 to February 26, 2015 hearing.
[25] Docket 77-12,

retrieve any of its emails because of the passage of time.  The fact that Defendants could no longer access its old Hotmail account, however, does not mean that emails may have been saved to the hard drives, and proofs or sketches of bag designs could have been located on the hard drives.  Defendants appear to counter these statements arguing that the wipe disk function was run only on the personal laptop, a laptop used only infrequently for business purposes, and that the wipe disk function was not used on the company PC.

The Defendants' position, however, requires the Court to rely on their credibility.  This again has been challenged.  During the April 13, 2015 hearing, Defendants again reiterated that they did not begin making candy until 2011.  Plaintiff, however, has newly discovered a document from the Texas Department of State Health Services that indicates that Defendants were manufacturing candy products as early as 2009.  *See* Docket No. 90-3.  In addition, at the hearing Defendants tendered Gilberto Luna Trevino as a witness.  Mr. Luna testified about the use of two different computers, a flash drive, and a physical "hard copy" file that may possess relevant data.  At best, Defendants did an incomplete investigation into what documents Mr. Luna possessed.  It appears that Defendants have now obtained the "hard copy" file maintained by Mr. Luna and has produced a few pages.  Since that hearing Plaintiff has attempted to depose Gilberto Luna Trevino for some time, and the deposition has been cancelled by Defendants for reasons not entirely clear to the Court.  Even more troubling is the fact that Defendants requested that this Court not issue any ruling on the various discovery motions until Mr. Luna's deposition was completed.  See page 45 of the April 13, 2015 transcript.  It is now July and the Court has not heard at all from the Defendants.  There has been no response to the Status Update filed by Plaintiff on June 11, 2015 (which attaches the document from the state agency showing candy products detained as adulterated, dangerous or fraudulent in 2009).

During the April 13, 2015 hearing it also became clear that Plaintiff has now received documents indicating Defendants' gross sales, but that data indicating costs incurred by Defendants is missing.   But that information is relevant to Defendants' defense, and is not relevant to any element of Plaintiff's causes of action.

Plaintiff also conceded during this hearing that since the alleged offending bags can be shown to the jury, Plaintiff has suffered no prejudice in establishing its dress infringement claims.  A question remains, however, whether Plaintiff has suffered prejudice because potential evidence of willful infringement has been lost.

## IV.    CONCLUSION

As discussed above Defendants failed to preserve relevant electronically stored information, violated a court order, and stalled the discovery process.  The Court finds that Defendants acted with the intent to deprive Plaintiff of relevant data in this litigation.  In addition to the behavior of Rafael Jr. in deploying CCleaner, it now has become apparent that Defendants have misled Plaintiff and this Court with the date they began competing with Plaintiff in the candy business.

The Court has attempted to utilize its case management authority by holding several conferences and evidentiary hearings to secure the missing information from other sources. These efforts have been partially successful.  Plaintiff has now secured gross sales data.   In addition, Plaintiff has now obtained a limited number of "hard copy" documents that relate to the design of the bags at issue.   Notwithstanding these efforts, Plaintiff has been deprived of data that is relevant to the issue of willful infringement, and has thus been prejudiced by Defendants' actions.

Plaintiff's counsel has not provided the Court with the necessary detail to support his application for attorney's fees.   The Court sanctions Defendants and orders Defendants to reimburse Plaintiff for the reasonable attorney's fees associated with the following:

1.  The preparation of the following motions:   Motion for Sanctions (docket no. 18), Motion to Compel (docket no. 27), Second Motion to Compel (docket no. 36), Motion for Sanctions (docket no. 40),

2.  Preparation and attendance at the following hearings:   May 27, 2014, February 26, 2015, and April 13, 2015.

3.  The taking of all of Defendants' depositions and the depositions of Rafael Jr.

Court reporter costs associated with the taking of all of Defendants' depositions and the depositions of Rafael Jr. are to be borne by Defendants.   To the extent these costs have already been paid by Plaintiff, Defendants are ordered to reimburse Plaintiff.

Plaintiff is granted leave to re-depose Rafael Sr. and Rafael Jr. and to conduct a Rule 30(b)(6) deposition.   In addition, Plaintiff is granted leave to depose Gilberto Luna Trevino.   The court reporter costs (and attorney's fees incurred by Plaintiff) of these depositions shall be borne by Defendants.

In the event that the parties are unable to reach an agreement as to what amount constitutes reasonable attorney's fees that should be awarded pursuant to this Order, Plaintiff is ordered to submit documentation to the Court showing the time spent preparing docket nos. 18, 27, 36, and 40, as well as time preparing for the hearings on May 27, 2014, February 26, 2015, and April 13, 2015, and time spent taking all of Defendants' depositions and the depositions of Rafael Jr. by July 16, 2015, so the Court can determine a reasonable attorney's fees.

The Court has made an attempt to order an award that restores Plaintiff to the position that it would have been but for the inappropriate actions by Defendants. The Court understands, however, that this Order does not fully restore Plaintiff because it does not address the loss of evidence that may establish willful infringement. The alleged infringing bags, however, are available for the jury to assess whether infringement has incurred or not. In addition, the new depositions ordered by the Court may provide evidence related to the issue of willfulness. Accordingly, at this time Plaintiff's request for a spoliation instruction to the jury is denied without prejudice to re-urging this request after the completion of discovery.

Plaintiff's Motion for Sanctions (docket no. 40) is granted in part and denied in part. Plaintiff's Motion for Sanctions (docket no. 42) is granted in part and denied in part. Plaintiff's Motion for Sanctions (docket no. 52) is granted in part and denied in part. Defendants' Motion to Strike Report of Special Master (docket no. 56) is denied. Plaintiff's Motion for Attorney's Fees (docket no. 84) is granted in part and denied in part.

SIGNED this 2nd day of July, 2015.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE